STATE EX REL. FROEDTERT GRAIN & MALTING COMPANY, INC., Plaintiff, vs. TAX COMMISSION, Defendant.

*January 11—April 28, 1936.*

228

For the plaintiff there was a brief by *Lamfrom, Tighe, Engelhard & Peck,* attorneys, and *Leon B. Lamfrom* and *Egon W. Peck* of counsel, all of Milwaukee, and oral argument by *Mr. Peck.*

The *Attorney General* and *Herbert H. Naujoks,* assistant attorney general, attorneys, and *Cyrus C. Thieme,* special counsel, for the defendant.

Briefs were also filed by *Upham, Black, Russell & Richardson,* attorneys, and *Perry J. Stearns* of counsel, all of·Milwaukee; by *Miller, Mack & Fairchild* of Milwaukee; by *Shaw, Muskat & Paulsen* of Milwaukee; by *Olin & Butler* (*Harry L. Butler* and *Ward Rector*) all of Madison; by *Lawrence A. Olwell* and *Bernard V. Brady,* both of Milwaukee; and by *Nicholson, Snyder, Chadwell & Fagerburg*

of Chicago, Illinois, and *Stephens, Sletteland, Sutherland & Cannon* of Madison, and *Erwin P. Snyder, Dewey F. Fagerburg,* and *Glenn W. Stephens* of counsel, as *amici curiæ.*

The following opinion was filed March 3, 1936:

FOWLER, J. The suit is brought directly in this court to procure a declaratory judgment as to the constitutionality of sec. 3, ch. 505, Laws of 1935, as amended by ch. 552, Laws of 1935, which imposes a two-and-a-half-per-cent tax on the transaction by which corporate dividends are declared and received out of income derived from property located and business transacted within this state. The relator is a Wisconsin corporation doing business in this state and Minnesota. The majority of its stockholders are nonresidents. The tax is deductible by the corporation from the dividends declared and payable by the corporation to the tax commission. It is declared by the statute to be a tax "for the privilege of declaring and receiving dividends." The full text of the section as amended is printed in the margin.[1]

---

[1] Section 3. *Privilege Dividend Tax.* (1) For the privilege of declaring and receiving dividends, out of income derived from property located and business transacted in this state, there is hereby imposed a tax equal to two and one-half per centum of the amount of such dividends declared and paid by all corporations (foreign and local) after the passage and publication of this act and prior to July 1, 1937. Such tax should be deducted and withheld from such dividends payable to residents and nonresidents by the payor corporation.

(2) Every corporation required to deduct and withhold any tax under this section shall, on or before the last day of the month following the payment of the dividend, make return thereof and pay the tax to the tax commission, reporting such tax on the forms to be prescribed by the tax commission.

(3) Every such corporation hereby made liable for such tax, shall deduct the amount of such tax from the dividends so declared.

(4) In the case of corporations doing business within and without the state of Wisconsin, such tax shall apply only to dividends declared and paid out of income derived from business transacted and property located within the state of Wisconsin. The amount of income attributable to this state shall be computed in accordance with the provisions of chapter 71. In the absence of proof to the con-

The relator contends that the statute is void because, (1) it purports to impose a tax on something that is "non-existent;" because (2) it impairs the obligation of contracts contrary to sec. 10, art. I, of the United States constitution; because (3) it violates the due process clause of the Fourteenth amendment to the United States constitution; because (4) it violates the equal privilege clause of the Fourteenth amendment; and because (5) it is so indefinite and uncertain as to be incapable of enforcement.

(1) It is claimed in several of the briefs filed in opposition to the tax imposed by the statute that the statute is void for attempting to impose a privilege tax on something that is not a privilege, but a right. Under some dictionary definitions this might be true, but the word "privilege," as used

---

trary such dividends shall be presumed to have been paid out of earnings of such corporation attributable to Wisconsin under the provisions of chapter 71, for the year immediately preceding the payment of such dividend. If a corporation had a loss for the year prior to the payment of the dividend, the tax commission shall upon application, determine the portion of such dividend paid out of corporate surplus and undivided profits derived from business transacted and property located within the state.

(5) Dividends paid by a subsidiary corporation to its parent shall not be subject to the tax herein imposed provided that the subsidiary and its parent report their income for taxation under the provisions of chapter 71 on a consolidated income return basis, or both corporations report separately.

(6) The provisions of this section shall not apply to dividends declared and paid by a Wisconsin corporation out of its income which it has reported for taxation under the provisions of chapter 71, to the extent that the business of such corporation consists in the receipts of dividends from which a privilege dividend tax has been deducted and withheld and the distribution thereof to its stockholders.

(7) For the purposes of this section dividends shall be defined as in section 71.02, except that the tax herein imposed shall not apply to stock dividend or liquidating dividends.

(8) The tax hereby levied, if not paid within the time herein provided, shall become delinquent and when delinquent shall be subject to a penalty of two per cent on the amount of the tax and interest at the rate of one-half per cent per month until paid.

(9) The tax hereby imposed shall, when collected by the tax commission, be paid by it into the state treasury.

in the statutes taxing privileges, is used as synonymous with right. Many cases are cited in Words and Phrases to this effect: Vol. 6 (First Series), p. 5583; vol. 3 (Second Series), p. 1206; vol. 6 (Third Series), p. 131; vol. 3 (Fourth Series), p. 178. This court has so construed the word in the inheritance tax cases. *Nunnemacher v. State,* 129 Wis. 190, 108 N. W. 627; *Beals v. State,* 139 Wis. 544, 121 N. W. 347; *Estate of Bullen,* 143 Wis. 512, 128 N. W. 109; *State ex rel. Kempsmith v. Widule,* 161 Wis. 389, 154 N. W. 695; *Estate of Stephenson,* 171 Wis. 452, 177 N. W. 579. It is true that some courts and text writers have made the broad statement that a privilege tax cannot be imposed on the right to own property. *Freiberg Co. v. Dawson* (D. C.), 274 Fed. 420, 434; Prof. Beals in 37 Harvard Law Review, 1. This may be so in the abstract, but it is not, and never has been so, in the concrete. Taxes were early imposed on the right to own carriages. They are now universally imposed on the right to own automobiles. They are imposed on the right to own dogs. The briefs in opposition to the tax are largely beside the case, because they do not recognize the true nature of the tax. The tax is a privilege tax, or an excise tax, one form of which is a tax imposed on the transfer of property. The federal government in its stamp taxes imposes a tax on the right to transfer property by deed; it formerly imposed a tax on the right to transfer funds in banks by check; it imposes taxes on the transfer of property by inheritance or will. These taxes are best characterized as a tax on the transaction involved. The power of the state to impose excise taxes is under our system of dual sovereignty as broad as the power of the federal government. True, taxation must not conflict with the Fourteenth amendment, but that we will consider later. "The power to impose taxes is one so unlimited in force and so searching in extent, that the courts scarcely venture to declare that it is subject to any restrictions whatever, except such as rest in

the discretion of the authority which exercises it. It reaches to every trade or occupation; to every object of industry, use, or enjoyment; to every species of possession." Cooley, Const. Lim. (7th ed.) p. 678. A sales tax in one view is but a tax on the right to buy—to receive—the thing sold, but is better viewed as a tax on the right to consummate the transaction of sale. There are, according to Cooley on Taxation (4th ed.), § 38, three kinds of taxes: Property taxes, capitation or poll taxes, and excises. Excise taxes are defined in Cooley, Const. Lim. (7th ed.) p. 680, as taxes "laid upon the manufacture, sale, or consumption of commodities within the country, upon licenses to pursue certain occupations, and upon corporate privileges." This definition is quoted with approval in *Flint v. Stone Tracy Co.* 220 U. S. 107, 31 Sup. Ct. 342, 55 L. Ed. 389. An excise tax is a privilege tax, as distinguished from a property or capitation tax. 2 Cooley, Taxation (4th ed.), § 837; *Black v. State,* 113 Wis. 205, 218, 89 N. W. 522. All taxes, not property taxes or capitation taxes are excise or privilege taxes. The word "privilege" is broad enough to cover any species of tax except these two and is used with such effect in our constitutional provision covering taxation:

"The rule of taxation shall be uniform, and taxes shall be levied upon such property with such classifications as to forests and minerals, including or separate or severed from the land, as the legislature shall prescribe. Taxes may also be imposed on incomes, privileges and occupations, which taxes may be graduated and progressive, and reasonable exemptions may be provided." Sec. 1, art. VIII, Wis. Const.

Much stress is laid in the briefs filed upon the declaration of the statute that the tax is imposed "for the privilege of declaring and receiving dividends." It is contended that the language imposes a tax upon the recipient of the dividend. The language is perhaps susceptible to the construction that

the legislature so considered it. But it is immaterial how the legislature considered it. The legislature cannot by its mere designation change the nature of the tax. Whatever the designation in the act may be, it is for the court to determine the nature and effect of the tax and uphold it or void it according as its nature and effect as determined may require. *McCallen Co. v. Com. of Massachusetts,* 279 U. S. 620, 49 Sup. Ct. 432, 73 L. Ed. 874; *Ed. Schuster & Co. v. Henry,* 218 Wis. 506, 261 N. W. 20.

However the legislature may have regarded the tax, we have no difficulty in construing the statute as imposing an excise or privilege tax upon the transaction involved of transferring the dividends from the corporation to its stock-holders.

(2) It is contended in several of the briefs in opposition to the tax that the statute is unconstitutional because it impairs the obligation of the contract of the corporation with its stockholders, especially as to its preferred stockholders. The point urged is that a state has granted a charter to a corporation covering the right to pay dividends to its stock-holders; that the right is a contract right, as a charter is a contract; and that this state cannot impair that right by imposing a special tax on the exercise of it. The defendant argues that this contention is effectively met by the holding of the United States supreme court in *Travis v. Yale & Towne Mfg. Co.* 252 U. S. 60, 40 Sup. Ct. 228, 64 L. Ed. 460, that the statute therein involved did not impair the contract obligations of the employer. That statute imposed a tax on salaries earned within the state of New York and required, as to nonresident employees, that the employer deduct the tax from the salaries paid and made the employer liable for its amount. The opinion in that case states, page 77, that there was no averment that any such contract existing before the passage of the New York act required

salaries to be paid in the state of the nonresident's residence, or contained any other provision conflicting with the provision for withholding salaries. This implies that the obligation to pay salaries was not impaired by the withholding provision of the statute, although it rested on contracts that existed prior to the enactment of the statute. The obligation to pay dividends is the pre-existing contract obligation it is claimed the instant statute impairs. We do not see that this obligation differs from the contract obligation to pay salaries involved in the case cited. If the latter obligation was not impaired by the New York statute, the former is not by our statute. As in the *Travis Case, supra,* there is here no allegation that the dividends involved are payable at the stockholder's residence. Dividends are payable where the directors determine. 5 Thompson, Corporations, 5298. They are not necessarily payable at the residence of the stockholder. If the *Travis Case* be considered as not reaching the precise point involved, the point is covered by the general proposition that if the state has the power to tax, no pre-existing contract in relation to the subject of the tax can operate to invalidate taxation of the subject under the contract clause of the United States constitution. *Chanler v. Kelsey,* 205 U. S. 466, 27 Sup. Ct. 550, 51 L. Ed. 882; *State v. Mollier,* 96 Kan. 514, 152 Pac. 771, L. R. A. 1916C, 551; *Royal Mineral Asso. v. Lord* (D. C.), 13 Fed. (2d) 227, 229.

(3) (a) It is claimed that if the tax be considered valid as to residents of the state it is unconstitutional as to nonresident stockholders as an attempt to tax nonresidents over whom the state has no jurisdiction. Such taxation is taking property without due process. *First Nat. Bank v. State of Maine,* 284 U. S. 312, 52 Sup. Ct. 174. The basis of this claim is that when the dividend is declared it becomes a debt due from the corporation to the stockholder and as such is taxable only by the state of the stockholder's residence. *State ex rel. Manitowoc Gas Co. v. Tax Comm.* 161 Wis. 111, 152

N. W. 848, and *Newport Co. v. Tax Comm.* 219 Wis. 293, 261 N. W. 884, are cited in support of this contention.

If the tax were considered as a property tax, or as a tax imposed on the nonresident, this would be correct. But the tax is an excise tax, a tax on the transaction involved. It is an excise tax imposed on the devolution of income, derived from transaction of business within the state, which is confessedly a proper subject of taxation. It is as much subject to an excise tax as is an inheritance tax, and the supreme court of the United States recognizes such taxes as not violating the United States constitution. *Magoun v. Illinois Trust & Savings Bank,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037. We perceive no substantial difference between the two classes of devolution, or the two transactions involved in the devolution of the subject of the transfer. The income involved in the *Manitowoc Gas Co. Case, supra,* was interest due from the gas company to the nonresident on the company's bonds. The income was held not taxable against the nonresident under our normal income tax law. The statute involved in that case imposed a tax "upon such income as is derived from sources within the state or within its jurisdiction.". Dividends derived from business transacted within the state constitute income derived as stated in that statute, and in the instant statute, in a sense that interest paid by a corporation does not. Interest paid may not have been earned at all. It may have been borrowed. And if earned it may not have been earned within the state, or not wholly earned therein. Income as used in the statute is synonymous with earnings. Interest paid is not. It is to be noted that the tax imposed on the salaries of nonresidents involved in the *Travis Case, supra,* was held not to impose a personal liability upon the nonresident employee. The tax, except as to a feature not involved herein, was upheld as a sequestration at their source of payment of earnings properly taxable which is precisely and only what the instant statute does.

(3) (b) It is contended in some of the briefs filed that the tax must be held to be a property tax under the rule of the United States supreme court in *Dawson v. Kentucky Distilleries & Warehouse Co.* 255 U. S. 288, 41 Sup. Ct. 272, 65 L. Ed. 638. A statute of Kentucky by its terms imposed a tax on whiskey of a stated sum per gallon when it was withdrawn from a bonded warehouse. The tax was held in the case cited to be a property tax because imposed by reason of the ownership of property computed on the value of the thing taxed. No transfer of property, no devolution of title, was involved in the transaction. The transaction was the mere removal of one's own property from the place where it was required by the United States government to be kept. It is claimed that on the same basis the instant tax must be so construed. If it is an excise tax as distinguished from a property tax, this does not follow. Excise taxes may be measured by the amount involved in the transaction covered. Every sales tax is so measured. A tax on a dividend so measured, notwithstanding the measure of it, remains an excise tax. *People v. Home Ins. Co.* 92 N. Y. 328; *Home Ins. Co. v. New York,* 134 U. S. 594, 10 Sup. Ct. 596. In the opinion of the United States supreme court in the above-entitled case it is said, page 600:

"As its [the state's] revenues to meet its expenses are lessened in one direction, it may look to any other property as sources of revenue, which is not exempted from taxation. Its action in this matter is not the subject of judicial inquiry in a federal tribunal."

The opinion cites *Delaware Railroad Tax Case,* 18 Wall. 206, 231, and *California v. Central Pacific R. Co.* 127 U. S. 1, 14, 8 Sup. Ct. 1073, in support of the proposition, and quotes from the opinion in the former:

"And the manner in which its [the franchise's] value shall be assessed and the rate of taxation, however arbitrary or capricious, are mere matters of legislative discretion."

The tax involved in the case cited was one expressly declared against the corporations. But the United States supreme court is authority for so considering the instant tax. It was held in *Barnes v. Philadelphia & R. R. Co.* 17 Wall. (84 U. S.) 294, 306, that a tax of five per cent on dividends declared by railroad and canal companies, due or payable to stockholders, including nonresidents, imposed by act of congress, which authorized the companies to deduct the amount of the tax from the dividends paid, was a tax against the corporation. The *Travis Case, supra,* so ruled in effect as to the New York statute. If the tax in the latter imposed no personal liability on the employee, and did impose such liability directly on the employer, it was in effect a tax directly on the employer. Upon like reason the instant tax may be considered as in effect imposed against the corporation.

(3) (c) It is claimed in some of the briefs opposing the tax that in requiring the corporation to withhold the tax from the dividend to each of its stockholders the statute imposes upon the corporations a burden of labor and incidental expense that renders it violative of the prohibition of the United States and state constitutions against taking property without due process and without compensation. This point is sufficiently met by the *Travis Case, supra.*

(4) What is said above under (3) covers in a general way the equality clause of the Fourteenth amendment as well as the due process clause. This clause "does not deprive the states of the power to adjust their systems of taxation in accordance with their own ideas of public policy." 12 C. J. p. 1151, § 881, and cases cited to note 57. "The rule of equality, in respect to the subject, only requires the same means and methods to be applied impartially to all the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances." *Kentucky Railroad Tax Cases,* 115 U. S. 321, 337, 6 Sup. Ct. 57, 63, 29 L. Ed. 414. The instant statute, whether con-

sidered from the viewpoint of the corporation or its stockholders, is within this requirement. A state transfer tax on sales of stock was upheld as not proscribed by the Fourteenth amendment in *Hatch v. Reardon,* 204 U. S. 152, 27 Sup. Ct. 188. A succession tax was upheld in *Orr v. Gilman,* 183 U. S. 278, 22 Sup. Ct. 213, and in this case it was held that the construction of the act as given by the New York court must be accepted by the federal courts. An inheritance tax statute was upheld in *Beers v. Glynn,* 211 U. S. 477, 29 Sup. Ct. 186. And in *Keeney v. New York,* 222 U. S. 525, 32 Sup. Ct. 105, a state transfer tax on transfers of property between parties alive was upheld. In this case it was held that the fact that the amount of the tax was based on the value of the property transferred did not operate to constitute the tax a property tax. "An excise on transfers . . . does not lose that character because the amount to be paid is determined by the values conveyed." Page 534 of the opinion, citing *Magoun v. Illinois Trust & Savings Bank,* 170 U. S. 283, 18 Sup. Ct. 594.

(5) It is contended in one of the briefs filed that the statute involved is so indefinite and uncertain in its terms as to be void independent of constitutional objections. This contention is based on paragraph (4) of the statute, which provides, among other things, that the amount of income attributable to the state shall be computed in accordance with the provisions of ch. 71, Stats. This chapter provides the method of determining the amount of business done within this state by foreign corporations under the general normal income tax law. It also provides that dividends, in absence of proof to the contrary, shall be presumed to have been made out of earnings attributable to this state during the preceding year; and that if a corporation declaring a dividend has sustained a loss during the preceding year the tax commission on application shall determine the portion payable from surplus

that was derived from business done within the state. In this connection the "Income Tax Regulations" of the Wisconsin Tax Commission are referred to. The attack here under consideration seems to be based more upon alleged indefiniteness and uncertainties of these regulations than on the statute. No doubt the administration of the normal income tax statute, as applied to corporate income due to business transacted within the state, presents many difficulties of administration. So far none have proved unsurmountable, as far as the acts of the commission that have come before this court show. We see no ground for fearing greater difficulties under the instant statute than under the normal income tax statute. The administration of the statute, in the first instance, is up to the Tax Commission. We shall not assume that the problems of administration will be impossible of solution.

We believe that the above covers all of the substantial objections to the tax imposed by the statute presented by the briefs filed in opposition to it, eight in number, comprising two hundred eighty-four printed pages. That all would be specifically treated is hardly to be expected. To do so would extend the opinion to undesirable limits.

Much of the briefs filed in opposition to the tax imposed by the statute involved is devoted to criticisms of the statute as unjust and of its alleged economic and administrative vices. Arguments along these lines do not present a justiciable question. Even if these criticisms are meritorious, the defects claimed in these respects cannot be considered by the court. The court can only determine as to the power of the legislature to enact the statute. It cannot pass upon its desirability or wisdom, or allow its views as to these matters to influence its judgment. Criticisms on these grounds can only properly be presented to and considered by the legislature.

*By the Court.*—It is declared and adjudged that sec. 3, of ch. 505, Laws of 1935, as amended by ch. 552, Laws of 1935, does not violate the constitution of the state of Wisconsin or the constitution of the United States, and is valid.

A motion for a rehearing was denied, with $25 costs, on April 28, 1936.

The following opinion was filed May 4, 1936:

FOWLER, J. (*on motion for rehearing*). There is a motion for rehearing and the brief in support of the motion reargues nearly all of the questions presented in the original briefs, perhaps with more force and cogency than they were originally presented, but the ultimate conclusion urged in all the briefs is in effect that the tax imposed is a property tax and a personal tax against the stockholder, and as such is unconstitutional as to nonresident stockholders.

From some things in the briefs on the motion for rehearing we fear that we failed to make our position entirely clear in the original opinion. Our position is that the tax is an excise tax on the transfer of earnings resulting from property located or business transacted within this state, and stands on the same basis of constitutionality that a state inheritance tax stands; that the tax of the state of New York on stock transfers, upheld in *Hatch v. Reardon,* 204 U. S. 152, 27 Sup. Ct. 188, stood; that the state tax in New York on the transfer of property by deed upheld in *Keeney v. New York,* 222 U. S. 525, 32 Sup. Ct. 105, stood; and that the tax on salaries of nonresidents earned within the state, upheld in *Travis v. Yale & Towne Mfg. Co.* 252 U. S. 60, 40 Sup. Ct. 228, stood. Earnings from property or transactions within the state are as much subject to a transfer tax as property within the state passing by inheritance or deed or other form of transfer, or salaries earned within the state. We

cannot perceive that the fact that the recipient is a nonresident any more invalidates the instant tax than the others stated, nor do we perceive that it makes any material difference whether the transfer tax is paid before or after dividends are declared from earnings.

It is urged in the brief for rehearing that the decisions of the United States supreme court in the cases involving inheritance taxes on stocks, *Rhode Island Hospital Trust Co. v. Doughton,* 270 U. S. 69, 46 Sup. Ct. 256, and *First National Bank v. Maine,* 284 U. S. 312, 52 Sup. Ct. 174, on bonds, *Farmers' Loan & Trust Co. v. Minnesota,* 280 U. S. 204, 50 Sup. Ct. 98, on debts for advancements and for unpaid declared dividends, *Beidler v. South Carolina Tax Comm.* 282 U. S. 1, 51 Sup. Ct. 54, inherited by a nonresident of the taxing state wherein the debtor was a corporation or resident of the taxing state, holding the tax unconstitutional, renders the instant tax unconstitutional. But it does not follow from these decisions that a transfer tax may not be imposed on the devolution of dividends resulting from property located or transactions conducted within the state. The basis of those decisions was that the things inherited were intangibles whose situs was at the residence of the owner, and subject to an inheritance tax only by the state of which the deceased owner was a resident. These cases do not reach the instant situation. It is true a dividend declared and not paid is a debt. But dividends declared from earnings made within a state have characteristics not possessed by other debts. They are debts so different in kind that the difference forms a proper basis of classification and renders them the basis of a transfer tax that other debts are not subject to. The basis of the instant tax is the fact that the dividends result from earnings from property situated or business transacted within this state. Such earnings are a proper subject of taxation, and therefore a proper basis for an excise

tax on the transfer of the dividends resulting therefrom. The case of *First National Bank v. Maine, supra,* so strongly relied on by plaintiff, legalizes the instant tax as to Wisconsin corporations. It holds that, although an inheritance tax may not be laid by a state on the devolution of stock of a domestic corporation owned by a nonresident decedent, the state may, on the issue of new certificates to take the place of the old, lay a tax on the transfer of the stock to nonresidents inheriting it. The declaring of a dividend is as much of a transaction within the state as is the making out of a stock certificate. If the state may impose a tax on the one transaction, it may on the other. Of course, it does not follow that the state may impose the instant tax in case of a foreign corporation because it may impose it in case of a domestic corporation. The declaring of a dividend by the foreign corporation and the transmittal of it would be done without the taxing state, and neither would be a transaction within it, nor would the funds out of which the dividend was paid be located within the taxing state at the time of the payment. But the fact that the earnings made by a foreign corporation within a state are not located therein does not prevent the state wherein they are earned from taxing the earnings, nor from enforcing the collection of the tax. No more should the circumstances above stated prevent the state from imposing the instant tax or enforcing its collection. The case of *First National Bank v. Maine, supra,* also states that the United States supreme court has reserved the question whether stock, bonds, etc., owned by a nonresident may by reason of their use within a state acquire such a situs within the state as to make them subject to an inheritance tax. By implication the question whether they may not be so used as to acquire a situs for other forms of transfer tax is also reserved; and so is the question whether the dividends involved in the instant transfer tax, which have been earned within

the state, have not such a constructive situs within this state as to render them subject to the tax imposed by the instant statute.

The brief on motion for rehearing assumes that we have held the tax imposed by statute to be against the corporation. We did not in the original opinion take the position that the tax is necessarily one against the corporation. We pointed out that one decision of the supreme court of the United States, *Barnes v. Philadelphia & R. R. Co.* 17 Wall. 294, 21 L. Ed. 544, has held that a tax on corporate dividends payable by the corporation was one against the corporation, and that another, *Travis v. Yale & Towne Mfg. Co., supra,* has held that the only liability for a tax on salaries of nonresidents payable by a corporation was imposed upon the corporation and treated the tax as in effect a tax on the corporation. Counsel state that a later decision of the United States supreme court, *Stockdale v. Atlantic Insurance Co.* 20 Wall. (87 U. S.) 323, holds that the tax involved in the *Barnes Case, supra,* was a tax against the stockholder. But if so, as stated in the later decision, "the question whether the tax . . . [is] on the stockholder or on the corporation . . . is one of form rather than substance." If the tax is an excise tax, and we hold that it is, it is entirely immaterial upon whom the burden of it ultimately falls. In a sales tax it falls, usually at least, upon the purchaser. In a stamp tax on deeds it usually falls on the seller. In an inheritance tax it falls on the recipient of the property. In the stock transfer tax above referred to it probably fell on the broker consummating the transfer. In a stamp tax on checks it falls on the drawer of the check. In none of the cases is it a personal property tax against the person upon whom the burden of it ultimately falls.

Counsel argue that the cases cited in the original opinion to the point that the instant statute does not violate the con-

tract clause of the federal constitution do not support that proposition. Maybe so. The decisions may speak for themselves. However this may be, we consider the proposition self-evident that, if the subject of a tax is taxable by the state, a corporation cannot by any form of contract between itself and its stockholders withdraw that subject from taxation. It would seem that no citation of authority is necessary to support that proposition. In case of a contract between the state and a corporation exempting the corporation or its property from taxation, if such a contract would be valid, the matter might stand differently, but we have no such contract here.

Several points are argued in the brief on the motion for rehearing that we did not mention in our original opinion because we considered them beside the case or patently not well taken. Several of these the plaintiff is not in a position to urge because it is not at all affected by the point suggested. For instance, it is urged that the statute is unconstitutional because it does not exempt from earnings receipts from governmental exempt securities. The plaintiff is not affected by this fact. None of its income is received from tax-exempt securities. This is enough to remove this contention from consideration. But we do not perceive that the fact that it does not specifically exempt receipts from tax-exempt securities affects the statute. If some assessor should include receipts from such sources with the dividends taxed, the inclusion would not invalidate the statute. It would only operate to invalidate the portion of the tax imposed by reason of such receipts.

It may also be said that the plaintiff, being a domestic corporation, is not in a position to urge the unconstitutionality of the tax as to foreign corporations. If it may, it is because the earnings of foreign corporations within the state are so great or so greatly exceed the earnings of domestic corpora-

tions as to warrant the assumption that the legislature would not have passed the act had they not considered the tax constitutional as to foreign corporations. On this assumption, if the statute were void as to foreign corporations, it would void the statute as a whole, and such invalidity might, perhaps, justify the plaintiff in raising the objection as to foreign corporations. In one of the briefs *amicus curiæ,* filed on behalf of a foreign corporation, the gross and comparative earnings of foreign and domestic corporations were stated, and argument was made that the facts stated established that the legislature would not have passed the bill had they believed that it could be held invalid as to foreign corporations. It is not permissible for us on demurrer to the complaint to consider the factual statements of this brief. Nor can we take judicial notice of the facts in this regard. Nor can we assume on the facts of the complaint that the legislature would not have passed the act if dividends of foreign corporations from earnings within the state are not subject to the transfer tax imposed. However, in view of the importance of the question, and the fact that the question has been as fully and ably presented in behalf of foreign corporations as it could have been were a foreign corporation a party to the litigation, we concluded to consider whether the act is invalid as to them. We conclude it is not. We perceive no more difficulty in taxing the transfer of dividends of foreign corporations attributable to business transacted or property situated within the state than in taxing such corporations on income so derived, and the validity of the latter form of taxation is established. The fact that the dividends involved are derived from earnings within the state gives them a constructive situs within the state. They are as readily collectible as is an income tax against a foreign corporation. Liability for payment of the tax is imposed upon the corporation. If such liability may be imposed there

is no difficulty about collecting it, and there is no more difficulty about imposing the liability than existed in the *Travis Case, supra,* about imposing upon the employer liability for the income tax on salaries of nonresidents earned within the state.

The above, we believe, sufficiently explains our position.

*By the Court.*—The motion for rehearing is denied.