STATE, Respondent, vs. BAKER, Appellant.

*June 5—October 10, 1939.*

384

*Norman L. Baker* of Milwaukee, for the appellant.

For the respondent there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

The following opinion was filed June 21, 1939:

NELSON, J.   The long-involved record before us relates to a controversy between the defendant and the income tax authorities of this state that has existed ever since the assessor of incomes of Milwaukee county notified the defendant of an assessment of additional taxes resulting from an office audit of defendant's income tax return for the year 1928. In 1929 the defendant and Mary K. Baker, his wife, made returns of their respective incomes for the year 1928.   The net incomes of the defendant and his wife were combined and the taxes computed on their joint incomes, pursuant to the provisions of sec. 71.05 (2) (d) and sec. 71.09 (4) (c), Stats. 1929.   Those statutes provided, in substance, that married persons living together as husband and wife might make separate returns or join in a single joint return, but in either

case, the tax should be computed on their combined incomes and paid by the husband, or paid by each of them in the proportion that the average income of each bears to the combined average income. The defendant promptly paid the sum of $189.40, the correct amount of the tax computed upon his return and that of his wife. Thereafter, upon an office audit of their returns, it appeared that the defendant, in computing his net income, had deducted the sum of $5,563.31 received by him in 1928 and that Mrs. Baker had likewise deducted the sum of $48, both of them believing that the said amounts were received by them as dividends and not as interest. The assessor of incomes, however, concluded that the said sums were not dividends but interest and consequently not deductible. The assessor, accordingly, on January 2, 1930, gave notice to the defendant of an additional tax assessment on 1928 income, computed upon the average combined incomes of the defendant and his wife for the years, 1926, 1927, and 1928. Upon the receipt of that notice the defendant, pursuant to the provisions of sec. 71.12, Stats. 1929, requested a hearing before the income tax board of review of Milwaukee county and objected to the additional assessment on the grounds : (1) That the disallowance of the $5,563.31 was erroneous because that sum was received by him as dividends, not interest, and (2) the imposition of a tax based upon the combined income of the defendant and that of his wife, was unconstitutional and void. At that time *Hoeper v. Tax Comm.* 202 Wis. 493, 233 N. W. 100, had not been decided. That decision was rendered on November 11, 1930. It was the opinion of this court that secs. 71.05 (2) (d) and 71.09 (4) (c), Stats. 1929, which authorized the imposition of income taxes based upon the combined incomes of husband and wife, were constitutional. Upon appeal to the United States supreme court our decision in the *Hoeper Case* was reversed upon the ground that the sections in question violated the constitution of the United

States. *Hoeper v. Tax Commission of Wisconsin,* 284 U. S. 206, 52 Sup. Ct. 120, 76 L. Ed. 248, decided November 30, 1931. Upon the hearing before the board of review above mentioned, the additional assessment made by the assessor of incomes on the 1928 income was affirmed. The defendant thereupon appealed to the Wisconsin tax commission. The commission affirmed the board of review. An appeal from the commission was then taken to the circuit court for Milwaukee county. The circuit court affirmed the decision of the commission in so far as it had determined that the sum of $5,563.31 received by defendant in 1928 was interest, not dividends, but reversed the commission in so far as it had determined that a tax could be assessed upon the combined incomes of the defendant and his wife. In reversing the tax commission the circuit court but followed the decision of the supreme court of the United States. The defendant appealed to this court and we held that the $5,563.31 received by the defendant was interest, not dividends. *Baker v. Tax Comm.* 210 Wis. 557, 246 N. W. 695.

Because of the pendency of the appeal to this court in *Hoeper v. Tax Comm., supra,* the assessor of incomes assessed no taxes on 1929 incomes. However, on June 1, 1931, after the decision rendered by this court upon that appeal, the assessor of incomes placed upon the June, 1931, tax roll, assessments of income taxes against the defendant based on his 1929 and 1930 income combined with that of his wife, duly averaged according to the then existing law. Neither assessment included the $5,563.31 involved in' the appeal to this court in *Baker v. Tax Comm., supra,* which was decided on February 7, 1933. At the time of receiving the notice of the assessments on the June, 1931, tax roll, the defendant was of the opinion that those assessments, based upon his income, combined with that of his wife, were illegal because the law which authorized such assessment was unconstitutional. He therefore computed the amount of his taxes based

solely upon his individual income for the years 1929 and 1930, treating the $5,563.31 as dividends rather than as interest, and determined that the amount of the taxes which were legally assessable against him was $891.27. On June 28, 1931, he offered to pay to the county treasurer of Milwaukee county the sum of $891.27. The county treasurer refused to accept the defendant's offer because the amount offered was less than the amount of the taxes assessed against him on the June, 1931, roll. On July 1st, following, the defendant tendered to the county treasurer the sum of $891.27 in currency. That tender was likewise refused. Subsequently, on March 11, 1932, the defendant procured a certified check for $891.27 and mailed it to the county treasurer. A letter accompanied the check in which, among other things, it was stated:

"I now have placed the fund in the form of a certified check payable to you, which I send you inclosed. Please accept the check as it was offered last July—unconditionally and without prejudice to either the county or myself, in case it should be determined that my liability is any greater or less than the amount tendered you."

The county treasurer held the check without comment until November 11, 1932, when he returned it to the defendant.

On August 1, 1931, the assessor of incomes placed upon the August roll an assessment based upon a recomputation of the 1928, 1929, and 1930 taxes, in which the $5,563.31 was treated as taxable income. That sum had not theretofore been considered in averaging the income for the years 1928, 1929, and 1930. The defendant was billed for the amount of those taxes by the county treasurer. The defendant took no proceedings to review either of the assessments placed upon the June, 1931, or August, 1931, rolls. As to the June assessment, he apparently relied upon his computation and the tender made to the county treasurer. In 1933 an additional assessment was made against the defendant on 1931

income resulting from a subsequent field audit. As to the assessment placed upon the August, 1931, roll, the defendant made no tender. When the circuit court decided in *Baker v. Tax Comm., supra,* that the defendant could not be taxed for his income combined with that of his wife, it entered an order on June 20, 1932, directing the assessor of incomes to make correction of the defendant's tax for the year 1928, by eliminating therefrom the income of his wife, which was complied with on July 5, 1932, and thereafter in the circuit court judgment, entered July 14, 1932, the amount of the normal and teachers' retirement surtaxes for the year 1928, were determined. After the decision of this court in *Baker v. Tax Comm., supra,* was rendered, the defendant requested the tax commission to make a field audit of his income for the years 1926 to 1931, inclusive, with the result that a report of said audit was made on April 27, 1933. Certain items which the defendant had either not reported or erroneously deducted were included in the audit. The audit report of the tax commission determined the corrected income of the defendant in each of the years involved herein. A copy of said audit and notice of the additional taxes based thereon was sent to the defendant on April 29, 1933. The defendant objected to the assessment of such additional income, and was later given a hearing before the income tax board of review of Milwaukee county. While that matter was pending before the board, the action herein was commenced. It was not tried until May 14, 1935. Pending the trial of the action, the board, on December 13, 1934, held a hearing and received in evidence the audit report of the tax commission. The defendant objected to the audit report of the commission and claimed that it was erroneous because it was based upon the combined incomes of himself and wife for the years 1926 and 1927. At the adjourned meeting of the board, held on January 17, 1935, the assessor introduced revised schedules and wholly eliminated Mrs. Baker's income and computed

the taxes accordingly. While the proceedings were pending before the board of review, the action was tried by the civil court on May 14, 1935. On May 9, 1935, the defendant paid into court the sum of $891.27. After the action was tried, but before the trial was reopened, the board of review held further hearings on the additional assessment which resulted from the 1933 field audit, and on July 19, 1935, rendered its decision sustaining an additional assessment based on 1929 income. While the action was still held under advisement, the defendant appealed to the tax commission from the July 19, 1935, order of the board and the tax commission rendered a decision sustaining the assessment of additional income, excepting a $3,000 loss item sustained by the defendant in 1924. No appeal was taken by the defendant from the decision of the tax commission. Upon the reopening of the trial, the defendant introduced the records of the board of review and the record on the appeal to the tax commission.

The civil court found in substance that the correct amount of the taxes which were properly and legally assessable against the defendant for the years 1929 and 1930, which had not been paid were as follows:

| | |
|---|---:|
| 1929 normal tax (averaged) | $385.68 |
| 1929 teachers' retirement-fund surtax (averaged) | 58.03 |
| 1930 normal tax (averaged) | 388.98 |
| 1930 teachers' retirement-fund surtax (averaged) | 58.58 |
| 1929 and 1930 additional normal tax (averaged) | 274.66 |
| 1929 and 1930 additional teachers' retirement-fund surtax (averaged) | 45.52 |
| Total | $1,211.45 |

The court further found that the taxes assessed upon the June 1 and August 1, 1931, rolls all became delinquent in thirty days and subject to penalties and interest from the dates of the delinquencies, and that the amount of such penalties and interest, computed as of November 1, 1936, upon

the true and correct amounts of the income taxes which the defendant actually owed as finally corrected by the tax commission in 1936 (which computation the defendant had introduced in evidence upon the trial being reopened upon defendant's motion), amounted to $793.15.

The civil court concluded that the defendant was indebted to the plaintiff for the unpaid taxes, penalties, and interest found to be due, and that the tender of the correct amount of the taxes which should have been assessed against him upon his returns for the years 1929 and 1930, after wholly eliminating therefrom the income of Mrs. Baker, availed the defendant nothing, because no tender of the correct amount of taxes due was authorized or permissible under the statutes of this state, ch. 71, Stats. 1929 and 1931, and because the defendant had failed to pursue the only remedy given him by law, which the legislature had declared to be exclusive.

Judgment for the full amount found by the trial court to be due was accordingly entered. Upon appeal to the circuit court that court held that the amount of the taxes, surtaxes, penalties, and interest were correctly computed upon the defendant's net taxable incomes for the years in question, but held that no penalties or interest should have been computed and added to so much of the taxes, viz., $891.27, as was tendered to the county treasurer of Milwaukee county, prior to the time of default. The circuit court thereupon modified the judgment of the civil court and entered its judgment accordingly.

Upon the appeal of the defendant and the plaintiff's motion for a review, two principal questions, to which all others are incidental, require determination.

(1) Were the taxes which both courts found were justly due from the defendant for the years in question and for which judgment was rendered against him, correctly computed upon his actual net incomes?

(2) Did the tender by the defendant of so much of the taxes assessed against him as exactly equaled the correct

amount of taxes which were lawfully due from him when the initial assessments were made and incorporated into the June 1, 1931, tax roll, legally operate to prevent the imposition of the penalty or the adding of interest to so much of the taxes as were so tendered?

As to the first question, it is our opinion that the tax commission finally in 1936 correctly computed the defendant's income tax liability for the years in question (which computation was introduced in evidence by the defendant after the trial had been reopened for the special purpose of permitting the defendant to introduce the record before the tax commission and the record in *Baker v. Tax Comm., supra*), and that since the defendant did not appeal from the decision of the tax commission rendered in 1936 he must be considered as bound by the determination. The record contains numerous computations made by the assessor of incomes, the board of review, the tax commission at different times during the pendency of this and the 1928 controversy. Some of them are based upon the combined income of the defendant and that of his wife as returned by them. Others relate to additional assessments based upon field audits subsequently made. The early computations based upon the combined-income statutes, *supra*, were concededly erroneous and illegal under the decision of the supreme court of the United States. The controversy from the outset has been fraught with much confusion because of the statutes (assumed to be constitutional), the decision of this court upholding them, and the decision of the supreme court of the United States which reversed the decision of this court. A situation involving more confusion and uncertainty would be difficult to imagine. The stand taken by the defendant, who asserted rights which were ultimately upheld by the supreme court in the *Hoeper Case* and who was desirous of paying the taxes justly due, but not more, and the stand taken by the taxing authorities under the law as it existed and as sustained by this court in the *Hoeper* decision, presented for some time a controversy which did not permit of easy settlement. We say this in

explanation and in justification of the positions taken by both parties to the controversy.

We have carefully examined and re-examined the numerous computations, and have reached the conclusion that the findings of the courts, based upon the final determination of the tax commission in 1936, cannot be assailed even though the decision of the tax commission be not given that finality which it should be given because of the fact that no appeal was taken from that decision by the defendant.

No useful purpose would be subserved by embodying the numerous computations into this opinion. To do so would unduly prolong it. It is our opinion that the defendant's contention that the amount of taxes as finally determined by the tax commission, and as embodied by both the civil and circuit courts into their judgments, was incorrect, is without merit.

As to the second question, we are of the opinion that the circuit court erred in holding that because the defendant, in 1931, before there was any default, tendered to the county treasurer the sum of $891.27, which was the exact amount ultimately found to be due from the defendant on the June 1, 1931, assessment roll, no penalty or interest should be added to that sum. The circuit court was of the view that the defendant made a tender which was unconditional and which should be given force and effect. Were it lawful and permissible for a taxpayer to tender so much of any income taxes assessed against him as he deems correct and owing, we should have no difficulty in affirming the circuit court in that respect. But we find no provision in the applicable income tax law which authorizes any such procedure. That law not only did not authorize a tender but specifically provided the remedy that must be pursued in contesting income tax assessments, and declared that remedy to be exclusive.

Sec. 71.16, Stats. 1929 and 1931, in part, provided:

"*Exclusive remedy for court review of any income tax assessment made, corrected or confirmed; payment of taxes when appeal to court is taken.* (1) The provisions for appeal

provided in this section shall be the sole and exclusive remedy for court review of any assessment of income or surtaxes made, corrected or confirmed.

"(2) No person against whom any assessment of income or surtaxes has been made, corrected or confirmed shall be allowed in any action or proceeding either as plaintiff or defendant to contest any such assessment unless such person shall first have availed himself of the remedies provided by sections 71.12, 71.14 and 71.15."

Sec. 71.12, Stats. 1929, provided:

*"Notice and hearing.* No additional assessment by office audit or field investigation shall be placed upon the assessment roll without notice in writing to the taxpayer giving him an opportunity to be heard in relation thereto. Such notice shall be served as a circuit court summons or by registered mail. Any person feeling aggrieved by such assessment shall be entitled to a hearing before the tax commission in the case of corporations or the county board of review in the case of persons other than corporations, if within twenty days after receiving notice of such proposed assessment he shall apply for such hearing in writing, explaining in detail his objections to such assessment. If no request for such hearing is so made, such assessment shall be final and conclusive. If a request for hearing is made the taxpayer shall be heard by the tax commission or the board of review as the case may be and after such hearing the tax commission or the board of review shall render its decision regarding such assessment."

Sec. 71.14, Stats. 1929, provided:

*"Exclusive original jurisdiction.* No person against whom an assessment of income tax has been made shall be allowed in any action or proceeding either as plaintiff or defendant to question any assessment of income, unless written objections thereto shall first have been presented in good faith to the tax commission in all cases of assessment made by such commission or to the county board of review in case of all assessments made by assessors of income, and full disclosure made under oath of any and all income of such party liable to assessment, and unless such person shall have availed himself of the remedies provided in section 71.12."

Sec. 71.15, Stats. 1929, provided:

*"Appeals to tax commission by persons other than corporations.* (1) Any person, including the assessor of incomes, dissatisfied with any determination of the county board of review may appeal within twenty days after the date of such determination to the tax commission, to whom a copy of the record of the board shall be certified, together with all evidence or a copy thereof, relating to such assessment. A copy of the notice of appeal shall be served upon the tax commission.

"(2) The tax commission shall review such assessments from the record thus submitted, and shall make necessary corrections and certify its conclusion to the county clerk, who shall duly notify the person liable for the taxes, and the assessor of incomes shall enter the corrected assessment on the assessment roll and certify the proper tax in the same manner as other income taxes are certified."

It will be recalled that when the initial assessments for the years 1929 and 1930 were placed upon the June 1, 1931, tax roll, the defendant received due notice thereof, but failed to apply in writing for a hearing before the board of review, and failed to explain in detail his objections to such assessments as provided by sec. 71.12. He simply tendered to the county treasurer so much of the assessment as he deemed correct (an amount which the tax commission ultimately determined to be correct). When the additional assessment was placed upon the August 1, 1931, tax roll the defendant made no tender of any of the taxes assessed and made no application for a hearing before the board of review. He doubtless felt that the matter of correctly adjusting his income taxes could be and would be determined later on by a field investigation conducted by the assessor of incomes, the board of review, or the tax commission when the controversies in the *Hoeper Case* and *Baker v. Tax Comm., supra,* were finally determined. He was perhaps justified in so feeling, but overlooked the fact that assessments had been made against him and that it was necessary to pay the taxes as assessed if he

would be absolved from the payment of penalties and interest. Sec. 71.10 (4) (d) provided that "income taxes shall become delinquent if not paid within thirty days after the same are due as provided in" ch. 71, "and when delinquent shall be subject to a penalty of two per cent on the amount of the tax and interest at the rate of one per cent per month until paid."

Sec. 71.17 provided for refunds of taxes paid and credits, and sub. (3) thereof provided that no credits should be allowed on any item of income or deduction, assessed as a result of an office audit, or assessed as a result of a field audit, the assessment of which shall have become final under the provisions of secs. 71.12 to 71.16, inclusive. Despite the urge to find a way to uphold the circuit court's disallowance of any penalty or interest on the sum of $891.27 tendered by the defendant, we find no way to do so. We are bound by the clear unambiguous language of the statutes and cannot by judicial construction introduce into them provisions and remedies which do not exist.

*By the Court.*—The judgment of the circuit court is reversed with directions to affirm the judgment of the civil court.

The following memorandum was filed October 10, 1939:

PER CURIAM (*on motion for rehearing*). The defendant, in support of his motion for rehearing, contends that in the proceedings before the taxing authorities of this state, his rights, guaranteed to him by the Fourteenth amendment to the constitution of the United States, were violated in that he, a citizen of the United States, was deprived of his property without due process of law and was denied the equal protection of the laws. We have carefully considered the defendant's contentions and are of the opinion that they are without merit.

*By the Court.*—Motion for rehearing denied.