MINNESOTA MINING & MANUFACTURING COMPANY, Appellant, vs. DEPARTMENT OF TAXATION, Respondent.*

*March 10—June 16, 1943.*

---

\* Motion for rehearing denied, with $25 costs, on September 14, 1943.

212

For the appellant there were briefs by *John L. Connolly* of St. Paul, Minnesota, and *Ela, Christianson & Ela* of Madison, and oral argument by *Mr. Connolly* and *Mr. G. Burgess Ela.*

For the respondent there were briefs by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons, Mr. J. Ward Rector,* deputy attorney general, and *Mr. Richard R. Teschner* of Madison.

A brief was also filed by *Thomas, Orr & Isaksen* of Madison, as *amicus curiæ.*

WICKHEM, J.    The facts in this case are not in substantial dispute.    Appellant is a Delaware corporation, with its principal office and place of business in St. Paul, Minnesota.    It operates a factory at Wausau, Wisconsin, manufacturing roofing granules.    This factory began manufacturing opera-

tions in 1930. Sales are made through an office in Chicago but orders are confirmed at the St. Paul office. When products so manufactured are sold, the remittances are made directly to the home office at St. Paul, and the funds from such sales are deposited in the general account of the appellant. Pay rolls, together with pay checks, are prepared at the St. Paul office and drawn on a Wausau bank, and a deposit equaling the amount of the pay roll is forwarded to the Wausau bank to cover the checks at approximately the same time that the checks representing the pay roll are forwarded. The company reports upon a calendar-year basis, closing books as of December 31st, each year. It maintains one general surplus account and none of the earnings from property located or business transacted in Wisconsin are segregated in any way. It maintains no separate balance sheet for Wisconsin operations. Dividends are declared by the board of directors of the company at meetings held in St. Paul; the First Trust Company of that city being the company's transfer agent. All dividends are paid to this transfer agent by check drawn upon a St. Paul bank and distributed to the stockholders by the transfer agent. Dividends are paid from surplus.

Sec. 34, Delaware Corporation Law, empowers corporations to declare and pay dividends either out of net assets in excess of its capital, or out of net profits for the fiscal year then current "and/or" the preceding fiscal year.

In making the assessments the department of taxation analyzed the surplus on December 31st of the year preceding that in which a particular dividend was paid. In this analysis the department went back to the date on which the corporation commenced doing business in Wisconsin for the purpose of determining, (1) total surplus existing at that time; (2) the ratable contribution of earnings in Wisconsin to the surplus as of December 31st, prior to the declaration of the dividends. The department selected the close of the year preceding the payment of the dividend as the basis of its computations rather than the surplus at the time of the pay-

ment or receiving of the dividend, it being the view of the department that unless the corporation had closed its books and taken inventory at the time of the payment of the dividend (in which case analysis would have been made as of that time) it would be impossible to revise the surplus as of each dividend-paying date. The dividends were paid out of the corporation's general account. There never was any attempt made to earmark any of the earnings coming from Wisconsin or other states, although the corporation did business in all of the other states of the Union.

Such contentions by appellant as question the constitutionality of the privilege dividend tax as applied by the Department of Taxation are sufficiently answered by the opinion in *International H. Co. v. Department of Taxation, ante,* p. 198, 10 N. W. (2d) 169. We proceed, therefore, to deal with contentions peculiarly applicable to this case.

Appellant contends that the department has not analyzed the surplus of appellant as of the date of the payment of the dividend. The record shows that dividends were paid on December 7, 1936, December 10, 1937, December 12, 1938, December 21, 1939, and December 10, 1940. The department analyzed appellant's surplus as of December 31, 1935, 1936, 1937, 1938, and 1939, respectively, for the reason that the corporation closed its books and took inventory as of those dates. We see no objection to this method. It is the same basis upon which the dividend was declared, namely, the ascertained surplus of the corporation available for dividends. We are not persuaded that there is anything jurisdictionally or procedurally lacking in a method of computation which follows the ordinary course of business adopted by the corporation itself in voting its dividend. Aside from this, there is a strong inference that dividends are paid out of assets ascertained to be available for this purpose. The normal corporate procedure is to use the last annual inventory and closing of the books to furnish the information, and the dividend is customarily based on the situation thus disclosed. If

some accurate method is in use in a particular case to disclose the general corporate situation as of the time of the dividend, it is for the corporation to show this, and if satisfactorily shown, it is proper for the department to use this as a basis for the tax.

It is next contended that no Wisconsin income was used in the payment of dividends, because the record demonstrates that all Wisconsin income was reinvested in physical assets of the corporation in Wisconsin. This contention misses the point. It seems to us that it can make no possible difference what is done with the particular money earned in Wisconsin so long as the earnings go to swell the total assets of the corporation. To the extent that they do this, and increase the margin of assets over liabilities, including capital, they are a proportional part of the funds available for dividends. None of the Wisconsin earnings are earmarked. According to the record, they are turned in to the home office, and reinvested in physical assets located in Wisconsin. This does not repel the inference that Wisconsin net earnings are a part of the funds out of which dividends are declared and paid.

It is finally contended that even if the assessments are held valid or partially valid, penalties and interest should not be imposed. We find the statutory requirements entirely clear and unambiguous upon this point, and there is no attack upon the validity of the provisions. Hence, we can only paraphrase what was said by this court in *State v. Baker,* 232 Wis. 383, 396, 286 N. W. 535, 287 N. W. 690, that despite the urge to find a way to avoid the imposition of penalties, "We are bound by the clear unambiguous language of the statute and cannot by judicial construction introduce into them provisions and remedies which do not exist." See in this connection *Laabs v. Tax Comm.* 218 Wis. 414, 261 N. W. 404; *State ex rel. Crucible S. C. Co. v. Tax Comm.* 185 Wis. 525, 201 N. W. 764.

*By the Court.*—Order and judgment are affirmed.

BARLOW, J., took no part.

The following memorandum was filed September 14, 1943 :

WICKHEM, J. (*on motion for rehearing*). The court has thoroughly considered the motions for rehearing filed herein and is not disposed to modify its views or to restate or amplify its opinion in any respect but one. In discussing the permissible retroactivity of the privilege dividend tax and noting an equal division of the court upon that point, the opinion did not indicate whether the difference in view was based upon the constitution of the state of Wisconsin, the constitution of the United States of America, or both. It may be useful to state that the constitutionality of the law in this respect was considered under both; and the court was of the view that the same considerations governed whichever constitution was applied.

*By the Court.*—Motion for rehearing is denied, with $25 costs.