MONTGOMERY WARD & COMPANY, Appellant, vs. DEPARTMENT OF TAXATION, Respondent.

*May 19—June 16, 1943.*

For the appellant there was a brief by *Rieser & Mathys* of Madison, and *John A. Barr, Ralph G. Crandall,* and *Henry*

*R. Marshall,* all of Chicago, Illinois, and oral argument by *Mr. Crandall, Mr. Marshall,* and *Mr. Clifford G. Mathys.*

For the respondent there was a brief by the *Attorney General* and *Harold H. Persons,* assistant attorney general, and oral argument by *Mr. Persons.*

MARTIN, J. The facts are not in dispute. The main facts are stipulated. The validity of the privilege dividend tax law is conceded. Appellant is an Illinois corporation, having its principal office in Chicago, and during the period in question it conducted a general merchandising business in forty-seven states of the United States, including Wisconsin, being duly authorized to transact such business.

Its business in Wisconsin consists of operating a number of retail general-merchandise stores. The cash receipts of each store, less such amounts as the local manager uses to pay certain local expenses, are deposited by him in a local bank. From time to time transfers are made from these local bank accounts to the corporation's accounts in banks in various large and centrally located cities which are concentration accounts. From these concentration accounts transfers are made to other bank accounts of the corporation as its needs require. Dividend payments are made by drafts drawn upon the treasurer. They are paid as presented by the banks to whom they have been indorsed and are met with such funds as the treasurer may have on hand at the time. The dividends are not paid by check drawn upon any particular bank account.

Separate accounts are kept of each store's operations. There is no separate surplus account for each store. The appellant maintains a single surplus account to which it credits all earnings, and against which all dividends paid are debited. There is no segregation of profits or earnings derived from property located and business transacted in Wisconsin appearing in the surplus account after certain profits or earnings have been credited to that account. There is no subdivision of the

single surplus account into separate accounts so that there is a separate one representing Wisconsin profits or surplus.

On October 25, 1935, the board of directors at a meeting in Chicago passed a resolution as follows:

"Resolved, that a dividend on the Class A stock of this company is declared out of the profits of the company for the year to date *exclusive of those derived from property located or business transacted in the state of Wisconsin* in the amount of $1.75 a share payable January 2, 1936, to stockholders of record December 20, 1936 [1935]."

On January 2, 1936, appellant paid to its stockholders a dividend on Class A stock of $352,719.50 *which was debited to its surplus*. Similar resolutions, containing same phraseology, were adopted and dividends were paid by appellant on its Class A stock or its common stock in varying amounts per share and *debited to its surplus* as follows:

| Date of Resolution | Date of Payment | Class of Stock | Total Dividend |
|---|---|---|---|
| Jan. 24, 1936 | April 1, 1936 | Class A | $ 352,719.50 |
| Feb. 28, 1936 | April 15, 1936 | Com. | 913,000.80 |
| May 21, 1936 | July 1, 1936 | Class A | 352,719.50 |
| May 21, 1936 | July 15, 1936 | Com. | 913,000.80 |
| July 24, 1936 | Oct. 1, 1936 | Class A | 352,719.50 |
| July 24, 1936 | Oct. 15, 1936 | Com. | 913,000.80 |
| Nov. 24, 1936 | Jan. 2, 1937 | Class A | 352,719.50 |
| Nov. 24, 1936 | Jan. 15, 1937 | Com. | 2,282,502.00 |
| Nov. 24, 1936 | Jan. 15, 1937 | Com. | 13,238,511.60 |
| Feb. 26, 1937 | April 1, 1937 | Class A | 352,719.50 |
| Feb. 26, 1937 | April 15, 1937 | Com. | 2,598,660.00 |
| May 28, 1937 | July 1, 1937 | Class A | 352,719.50 |
| May 28, 1937 | July 15, 1937 | Com. | 2,605,984.00 |
| July 30, 1937 | Oct. 1, 1937 | Class A | 352,719.50 |
| July 30, 1937 | Oct. 15, 1937 | Com. | 2,608,567.00 |
| Nov. 26, 1937 | Jan. 3, 1938 | Class A | 352,719.50 |
| Nov. 26, 1937 | Jan. 15, 1938 | Com. | 2,608,573.80 |
| Feb. 25, 1938 | April 1, 1938 | Class A | 352,719.50 |
| Feb. 25, 1938 | April 15, 1938 | Com. | 2,608,573.50 |
| May 24, 1938 | July 1, 1938 | Class A | 352,719.50 |
| May 24, 1938 | July 15, 1938 | Com. | 1,304,286.75 |
| Aug. 26, 1938 | Oct. 1, 1938 | Class A | 352,719.50 |
| Aug. 26, 1938 | Oct. 15, 1938 | Com. | 1,304,286.75 |

Appellant did not report or pay any privilege dividend taxes for the years in question. On December 3, 1938, after a field audit, the Wisconsin tax commission gave appellant notice of the assessment of taxes in the sum of $21,638.34, exclusive of penalties and interest. This assessment covered the period to August 26, 1938. Thereafter, following the decision in *J. C. Penney Co. v. Tax Comm.* (1941) 238 Wis. 69, 298 N. W. 186, a recomputation of the taxes was made to conform with the decision in that case and to include the period from August 26 to October 15, 1938. On this recomputation an assessment in the sum of $14,813.93 was made against appellant, exclusive of penalties and interest. The taxes were computed by analyzing appellant's surplus and taxing the same proportion of each dividend as the amount of surplus attributable to Wisconsin bore to the total surplus.

Between September 26, 1935, and October 15, 1938, appellant declared and paid to its stockholders dividends in the amount of $38,131,581.50. All of these dividends were declared by its board of directors meeting in Chicago and each dividend resolution contained substantially the language of the resolution quoted above. The appellant does not question the method or accuracy of the computation of the taxes. It seeks to avoid the tax by specifying in its dividend resolutions that dividends shall be declared and paid out of the profits "of the company . . . exclusive of those derived from property located and business transacted in the state of Wisconsin."

In the *Penney Case, supra,* page 78, this court said :

"When the corporation declared its dividends in 1936, it drew upon its net assets in excess of its capital (surplus) as required by the law of Delaware. Its net profits for the year 1935 are to be found in its surplus at the end of the calendar year. When the company drew upon this surplus for the payment of the dividend declared, it did not draw upon 1935 income but on its entire surplus. It must be presumed, however, that when it drew upon the surplus which contained

Wisconsin income, it drew upon Wisconsin income to the extent of the proportion which Wisconsin income bore not to the income for the year 1935 but to the whole amount of the surplus."

In the case of *International H. Co. v. Department of Taxation, ante,* p. 198, 10 N. W. (2d) 169, referring to the above statement from the *Penney Case, supra,* the court said (p. 209) :

"In making this statement it was not intended to create an artificial rebuttable presumption, comparable to that created in sub. (4) of the Dividend Tax Act. What the court meant to hold and what we do hold is that in this situation there is a strong if not inevitable inference to the effect noted; in other words, that the conclusion not only can be arrived at by ordinary methods of reasoning without dependence upon a judicially created presumption, *but that it cannot be avoided by any evidence that we have presently in mind.*"

In *Minnesota M. & M. Co. v. Department of Taxation, ante,* p. 211, 10 N. W. (2d) 174, the court said (p. 215) :

"It is next contended that no Wisconsin income was used in the payment of dividends, because the record demonstrates that all Wisconsin income was reinvested in physical assets of the corporation in Wisconsin. This contention misses the point. It seems to us that it can make no possible difference what is done with the particular money earned in Wisconsin so long as the earnings go to swell the total assets of the corporation. To the extent that they do this, and increase the margin of assets over liabilities, including capital, they are a proportional part of the funds available for dividends. None of the Wisconsin earnings are earmarked. According to the record, they are turned in to the home office, and reinvested in physical assets located in Wisconsin. This does not repel the inference that Wisconsin net earnings are a part of the funds out of which dividends are declared and paid."

The privilege dividend tax was enacted by ch. 505, Laws of 1935, and was amended by ch. 552, Laws of 1935; chs. 233,

265, and 309, Laws of 1937; chs. 198, 412, 443, and 535, Laws of 1939; and ch. 63, Laws of 1941. Sec. 71.60, 3, provides in part:

"(1) For the privilege of declaring and receiving dividends, out of income derived from property located and business transacted in this state, there is hereby imposed a tax equal to 3 per cent of the amount of such dividends declared and paid by all corporations (foreign and local) except those specified in paragraphs (d) and (g) of subsection (1) of section 71.05 of the statutes, after the passage and publication of this act and prior to July 1, 1943. Such tax shall be deducted and withheld from such dividends payable to residents and non-residents by the payor corporation. . . .

"(4) In the case of corporations doing business within and without the state of Wisconsin, such tax shall apply only to dividends declared and paid out of income derived from business transacted and property located within the state of Wisconsin. The amount of income attributable to this state shall be computed in accordance with the provisions of chapter 71. In the absence of proof to the contrary, such dividends shall be presumed to have been paid out of earnings of such corporation attributable to Wisconsin under the provisions of chapter 71, for the year immediately preceding the payment of such dividend. If a corporation had a loss for the year prior to the payment of the dividend, the tax commission shall upon application, determine the portion of such dividend paid out of corporate surplus and undivided profits derived from business transacted and property located within the state."

Ch. 32, sec. 157.41, Ill. Rev. Stats., provides:

"The board of directors of a corporation may declare and the corporation may pay dividends on its outstanding shares in cash, property, or its own shares, subject to the following provisions:

"(a) No dividend shall be declared or paid at a time when the corporation is insolvent or its net assets are less than its stated capital, or when the payment thereof would render the corporation insolvent or reduce its net assets below its stated capital. . . ."

It is stipulated that if the amount of appellant's Wisconsin income is finally determined in accordance with the decision of the Wisconsin board of tax appeals, then it is agreed that the appellant's privilege dividend tax liability, exclusive of interest, for the period under review, is $14,813.93. All dividends declared and paid were paid from cash assets, that is, none of the dividends were paid in its own shares or other form of property. Among the stipulated facts is the following:

"(31) At all times during the period under review the petitioner's [appellant's] surplus was in excess of $34,974,868.07. The portion of petitioner's [appellant's] surplus accumulated from Wisconsin income did not exceed $1,092,211.24 at any time during the period under review."

Whatever appellant's surplus accumulated from Wisconsin income was, it is conceded to have been a part of the company's surplus, against which all dividends paid were debited. The camouflage of the wording of the resolutions declaring dividends is by no means conclusive. The court must look to the substance rather than the form of the transaction. *Ford Hydro-Electric Co. v. Aurora,* 206 Wis. 489, 240 N. W. 418; *Norris v. Tax Comm.* 205 Wis. 626, 630, 237 N. W. 113, 238 N. W. 415; *Miller v. Tax Comm.* 195 Wis. 219, 217 N. W. 568.

What is said in the *Penney Case,* the *International H. Co. Case,* and the *Minnesota M. & M. Co. Case, supra,* is particularly applicable in the instant case. The appellant did not meet its burden of proof. In the *Minnesota M. & M. Co. Case* the contention was made that no Wisconsin income was used in the payment of dividends; that all Wisconsin income was reinvested in physical assets of the corporation in Wisconsin. The court said, *ante* (p. 215):

"It seems to us that it can make no possible difference what is done with the particular money earned in Wisconsin so long

as the earnings go to swell the total assets of the corporation. To the extent that they do this, and increase the margin of assets over liabilities, including capital, they are a proportional part of the funds available for dividends."

In that case the court held that the procedure followed did not repel the inference that Wisconsin net earnings were a part of the funds out of which dividends were declared and paid. It follows that the order and judgment appealed from must be affirmed.

*By the Court.*—Order and judgment affirmed.

BARLOW, J., took no part.